UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

GUILLERMO ALDACO, JR.,

       Plaintiff,

v.

ERIC HOLDER, U.S. Attorney General; JOHN
GAEDE, Case Manager; G. VILLAREAL,
Unit Manager; J. ISAACSON, Counselor, et
al.,

       Defendants.

Civil No. 10-590 (JRT/LIB)

**REPORT AND
RECOMMENDATION**

This matter came before the undersigned United States Magistrate Judge pursuant to a

general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(B),

upon the Motion of Defendants to Dismiss, or in the alternative, for Summary Judgment. The

Plaintiff Guillermo Aldaco ("Aldaco") appears pro se and the Defendants Eric Holder

("Holder"), John Gaede ("Gaede"), G. Villareal ("Villareal"), and J. Isaacson ("Isaacson")

(collectively the "Defendants") appear by Ana H. Voss, Assistant United States Attorney. For

the reasons set forth below, the Court recommends that Defendants' Motion to Dismiss be

GRANTED.

## I.    BACKGROUND

### A.    Facts

Plaintiff is incarcerated at the Federal Correctional Institution in Sandstone, Minnesota

("FCI Sandstone"). Plaintiff is serving a 163 month sentence, with five years supervised release,

for Conspiracy to Distribute Methamphetamine and Cocaine in violation of 21 U.S.C. § 846,

and Failure to Appear for Sentencing, in violation of 18 U.S.C. § 3146(a)(1). (Compl., p. 3; Dec. of Angela Buege [Dkt. 11], Ex. A). The Plaintiff's complaint alleges the following facts. On May 7, 2007, Plaintiff arrived at FCI Sandstone. Initially, the Bureau of Prisons ("BOP") classified him as a Low Security Inmate. (Dec. of John Gaede [Dkt. 12], Ex. A). Once at FCI-Sandstone, Plaintiff eventually submitted a request for transfer to a facility in Arizona in order to be closer to his family. (Compl., p. 9). While agreeing to place the request that Plaintiff be transferred with the Designation Sentence and Computation Center ("DSCC"), Plaintiff's unit team, including Gaede and Villareal, also decided to request that a "Greater Security" Management Variable be placed upon Plaintiff's security classification in October 2008. (Compl., p. 9). Ultimately, the DSCC placed a "Greater Security" Management Variable upon Plaintiff's security classification due to his failure to appear for sentencing. (Compl., p. 4). At the same time, the DSCC denied his request to transfer. (Compl., p. 5).

Petitioner alleges that he was never notified of the fact that a management variable was placed against him until it was too late to be challenged. (Compl., p. 4). After learning about the management variable that was placed on his record, Plaintiff utilized the proper administrative channels to attempt to change the placement of the Greater Security Management Variable on his security classification. (Compl., p. 4). However, Plaintiff's appeals were denied. (Compl., p. 5, 11). Moreover, Plaintiff alleges that he did not receive a 409 Form, which notified him of the management variable, until months after he was denied transfer and the management variable was placed on his file. (Compl., p. 10).

Petitioner appears to assert a number of claims in his pro se complaint.

Plaintiff claims that "he is being unduly and unfairly punished for activities engaged in since his arrival at the Sandstone facility, such a[s] assisting other inmates with their legal work

and even his own." (Compl., p. 5, 12). Thus, Plaintiff maintains he is unable to obtain a fair custody classification hearing. (Compl., p . 6-7). Furthermore, Plaintiff generally contends that "while staff at this institution refuse to admit it, the petitioner sees a trend at this institution to treat non-caucassion inmates with a different, and lower, standard of fairness than those who are of the white race." (Compl., p. 5). Additionally, Plaintiff argues that his right to due process has been impinged because he did not receive a fair custody classification hearing. (Compl., p. 8). Plaintiff further asserts that the Bureau of Prisons ("BOP") violated its own policies by failing to give him a fair custody classification hearing. (Comp., p. 8). As to remedies, Plaintiff seeks $50,000 in punitive damages, requests that the Greater Security Management Variable be removed from his custody form, and asks for an immediate investigation concerning the conduct of his unit team members. (Compl., p. 12). In summary, Plaintiff appears to be asserting a due process claim, a conspiracy to violate his constitutional rights claim, a retaliation claim, and an equal protection claim.

Defendants bring a Rule 12(b)(6) Motion to Dismiss, or in the alternative, a Motion for Summary Judgment. In support of their motion, the Defendants have submitted a number of affidavits. The Court declines to consider these additional submissions. Instead, the Court considers only the allegations made in the complaint and documents attached to the complaint. As such, the Court delinces to convert the Defendants' Rule 12 motion to dismiss into a Rule 56 motion for summary judgment.

### 2. Bureau of Prisons Policies

At issue in Plaintiff's due process argument is the application of a Greater Security Management Variable to his security classification. BOP institutions are classified into five security levels including Minimum, Low, Medium, High and Administrative. The BOP

designates an inmate to a facility based on the level of security required by the inmate and the security provided by the facility. See BOP Program Statement ("PS") 5100.08, Inmate Security Designation and Custody Classification Manual, Ch. 1, p. 1.[1] Moreover, the BOP adds "Management Variables" to inmates' security classifications when it determines that a prisoner needs increased security measures. P.S. 5100.08, Ch. 5. The Administrator of the BOP's DSCC approves all Management Variables. The BOP applies a "Greater Security" Management Variable when it finds that the inmate represents a greater security risk than the assigned security level otherwise reflects. P.S. 5100.08, Ch. 5, p. 5.

## II.    STANDARD OF REVIEW

On a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6), the Court dismisses a claim if there has been a failure to state a claim upon which relief may be granted. Courts liberally construe a pro se plaintiff's complaint on a 12(b)(6) motion to dismiss. Erickson v. Pardus, 551 U.S. 89, 94 (2007). A pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Id. Further, courts take all well-pleaded allegations as true and make all reasonable inferences in the light most favorable to the nonmoving party. St. Croix Waterway Ass'n v. Meyer, 178 F.3d 515, 519 (8th Cir. 1999). As such, a complaint should not be dismissed for failure to state a claim unless it appears beyond a reasonable doubt that the plaintiff cannot prove any set of facts entitling him to relief on his claim. Young v. City of St. Charles, Mo., 244 F.3d 623, 627 (8th Cir. 2001).

However, a plaintiff cannot rely on mere general and conclusory allegations to survive the motion to dismiss. Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985). "Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic

---

[1] BOP P.S. 5100.08 is a matter of public record. As such, the Court may take "judicial notice" of them. See Stahl v. United States Dep't of Agriculture, 327 F.3d 697, 700 (8th Cir. 2003) (determining that court may take judicial notice of public record and consider them without transforming the motion into one for summary judgment).

Corp. v. Twombly, 550 U.S. 544, 555 (2007). In addition, the complaint must contain a claim that is plausible on its face. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). A claim is facially plausible when it is supported by facts which allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id.

To make a determination on a motion to dismiss courts generally consider only the allegations contained in the complaint. McAuley v. Fed. Ins. Co., 500 F.3d 784, 787 (8th Cir. 2007). Additionally, the court may consider exhibits attached to the complaint. Mattes v. ABC Plastics, Inc., 323 F.3d 695, 698, n. 4 (8th Cir. 2003).

## III.    DISCUSSION

Plaintiff apparently brings his claim under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971). A Bivens action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. See Bivens, 403 U.S. at 395-97. A Bivens claim allows a plaintiff to bring an action for money damages against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. Id. A plaintiff asserting a claim under Bivens must show the violation of a valid constitutional right by a person acting under color of federal law. Id.

To restate, in his complaint, Plaintiff brings a due process claim, a conspiracy to violate his constitutional rights claim, a retaliation claim, and an equal protection claim. Plaintiff asserts the claims against the Defendants both individually and in their official capacity.

The Defendants have brought a Rule 12(b)(6) motion to dismiss. Specifically, the Defendants argue that Plaintiff's official capacity claims are barred by the doctrine of sovereign immunity. Additionally, Defendants contend that Plaintiff's claims should be dismissed on the

5

grounds of qualified immunity. Finally, Defendants assert that Plaintiff's remaining claims fail as a matter of law. In the following analysis, the Court considers Plaintiff's claims in regard to each of the Defendants' arguments.

### A. Claims Against Defendants Eric Holder and John Isaacson

Originally, Plaintiff's complaint listed Eric Holder and John Isaacson as Defendants. However, in his Objections to Defendant's motion to dismiss, Plaintiff requests that the Court "issue an Order dismissing Defendant Eric Holder and Defendant John Isaacson as 'Defendants' herein." (Pl.'s Objections to Def.'s Mot. to Dismiss [Docket No. 19], p. 6). Thus, the Court recommends dismissal of the claims against Eric Holder and John Isaacson.

### B. Sovereign Immunity

"Sovereign immunity is a jurisdictional doctrine, and the terms of the United States' consent to be sued in any court define that court's jurisdiction to entertain the suit." Brown v. United States, 151 F.3d 800, 803-804 (8th Cir. 1998). As a sovereign power, the United States may be sued only to the extent that it has consented to suit by statute. United States Dept. of Energy v. Ohio, 503 U.S. 607, 615 (1992). Therefore, sovereign immunity holds that the United States, and its agencies and instrumentalities, including the BOP, are immune from suit, unless a waiver of such immunity has been "expressed unequivocally" by Congress. Manypenny v. United States, 948 F.2d 1057, 1063 (8th Cir. 1991).

In this case, Plaintiff alleges that the Defendants, as agents of the United States government through their employment with the BOP, have violated the constitution. However, to the extent that the Plaintiff sues the Defendants in their "official capacities," the United States is the real party in interest, and sovereign immunity bars those claims. Kentucky v. Graham, 473 U.S. 159, 166 (1985) (suits against public officials acting in their official capacities should be

treated as suits against the public entity). Congress has not waived the sovereign immunity of the United States Government, or its agencies, for claims that their employees have violated the Constitution. Bivens, 403 U.S. at 410; Buford v. Runyon, 160 F.3d 1199, 1203 (8th Cir. 1998). A Federal prisoner may bring a Bivens claim against an officer individually, subject to the defense of qualified immunity, but "[t]he prisoner may not bring a Bivens claim against the officer's employer, the United States, or the BOP . . . [because] his only remedy lies against the individual," with respect to the alleged constitutional deprivation. Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 72 (2001). Accordingly, the Court recommends that Plaintiff's claims against the Defendants in their "official capacities" be dismissed for lack of subject matter jurisdiction.

### C.      Qualified Immunity/Due Process

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Courts make two inquiries when considering whether qualified immunity applies. First, courts ask whether the facts alleged demonstrate that the officer's conduct violated a constitutional right. Sherbrooke v. City of Pelican Rapids, 513 F.3d 809, 813 (8th Cir. 2008). Second, courts contemplate whether the constitutional right was clearly established at the time of the violation, such that a reasonable person would have known that his conduct violated a constitutional right. Id. In Pearson v. Callahan, the Supreme Court held that lower courts could undertake the two steps in a qualified immunity analysis in any order. 129 S. Ct. 808, 818 (2009).

Here, Plaintiff contends that the Defendants violated his Fifth Amendment right to due process. Specifically, Plaintiff alleges that the Defendants have violated his due process rights

by depriving him of a fair custody classification hearing in violation of his liberty interests. (Compl., p. 8). According to Plaintiff, Defendants' actions further violated his due process right to engage in legal activities. (Compl., p. 6-7). In addition, Plaintiff argues that the BOP violated its own policies and procedures requiring fair classification hearings, (Compl., p. 8)., and that BOP policies and due process requirements further required Plaintiff to be notified of the request to place a Greater Security Management Variable on his record before the request was approved. (Compl., p. 9). However, as addressed below, these allegations fail to state a violation of federal constitutional law as required in order to overcome the doctrine of qualified immunity.

As the first prong of the qualified immunity analysis requires, this Court evaluates whether Plaintiff has stated a violation of a constitutional right. When neither life nor property is involved, a Due Process violation only occurs when a plaintiff's "liberty interest" has been infringed. See Wolff v. McDonnell, 418 U.S. 539, 556-558 (1974). In the prison context, a liberty interest is created by either the Due Process Clause, see Sandin v. Conner, 515 U.S. 472, 479 n. 4 (1995) (citing Vitek v. Jones, 445 U.S. 480, 493-94, (1980)), or through a statute, Id. at 477-78, 483-84. To determine whether an inmate possesses a liberty interest, courts look to the nature of the claimed interest and determine whether the Due Process Clause applies. See Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 570-71 (1972). An inmate holds a protectable right in those interests to which he has a legitimate claim of entitlement. See Greenholtz v. Inmates of Neb. Penal and Corr. Complex, 442 U.S. 1, 7 (1979). However, the Due Process Clause does not protect a prisoner from every modification in the condition of confinement that results in an adverse impact on the prisoner. Sandin v. Conner, 515 U.S. at 484-87. Instead, a change in the condition of confinement implicates a liberty interest only when the action creates

deprivations "which work such major disruptions in a prisoner's environment and life that they present dramatic departures from the basic conditions and ordinary incidents of prison sentences." Moorman v. Thalacker, 83 F.3d 970, 972 (8th Cir. 1996).

Specifically relevant to the present case, courts have found that a change in a security classification does not create an "atypical and significant hardship" meaning that federal inmates, once incarcerated, do not have a constitutional due process right to a particular security classification. See Moody v. Daggett, 429 U.S. 78, 88 n. 9 (1976); Cardoso v. Calbone, 490 F.3d 1194, 1198 (10th Cir. 2007) (upholding district court's ruling that a reduction in classification level does not implicate a liberty interest); Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995)(finding that "a prison inmate does not have a protectable liberty or property interest in his custodial classification and an inmate's disagreement with a classification is insufficient to establish a constitutional violation"); Gross v. Holder, 714 F.Supp.2d 133, 136 (D. D.C. 2010) (finding that an inmate has no due process liberty interest in obtaining or maintaining a particular security classification); Smith v. Grondolsky, 2010 WL 891587 (D. N.J. Mar. 9, 2010) (same); Cline v. Young, 2008 WL 2199300 (W.D. La. Apr. 14, 2008) (same). Furthermore, "the law is clear that a prisoner has no constitutional right to be placed in any particular correctional facility, even the degree of confinement in one facility may be different from that in another." Foster v. Washington-Adduci, 2010 WL 1734916 at *6 n. 3 (C.D. Cal. 2010 Mar. 24, 2010) (citing Olim v. Wakinekona, 461 U.S. 238, 244-45 (1983); Meachum, 427 U.S. at 224-25)).

Therefore, Plaintiff has not demonstrated that his security classification presents atypical and significant hardships in relation to ordinary prison life. Accordingly, his pleadings do not raise a plausible violation of a constitutional right. While the imposition of a Greater Security Management Variable may affect Plaintiff's confinement such as resulting in him being placed in

an institution with greater security than he may desire, this clearly is not the kind of "atypical and significant hardship" contemplated by <u>Sandin</u>. Moreover, Plaintiff has not provided any explanation as to why the BOP's application of a revised Management Variable in this case is different from other cases where Courts have refused to find a liberty interest was implicated by a change to a prisoner's security classification. Plaintiff does not have a protected liberty interest in his classification or assignment to a particular prison.

Plaintiff also asserts that BOP P.S. 5100.08 creates a liberty interest in prisoners' security classifications requiring Due Process protection. (Pl.'s Objections to Mot. to Dismiss [Docket No. 19], p. 4-5).[2] However, contrary to Plaintiff's contention, BOP regulations do not create a liberty interest in a prisoner's security classification. Generally, statutes which grant an agency a great deal of discretion do not create a liberty interest. Thus, a protected liberty interest exists only when a regulation uses "explicitly mandatory language" instructing the decision-maker to reach a specific result if certain criteria are met. <u>Kentucky Dept. of Corrs. v. Thompson</u>, 490 U.S. 454, 463 (1989). A prisoner must "have a legitimate claim of entitlement" to a certain prison condition in order for a liberty interest to be created. <u>Bulger v. United States Bureau of Prisons</u>, 65 F.3d 48, 50 (5th Cir. 1995). Courts have found that the BOP policy delineating the

---

[2] Furthermore, Plaintiff argues that <u>United States v. Pearson</u>, 553 F.3d 1183 (8th Cir. 2009) supports his case because "a failure to report to prison, failure to report from furlough or from work and day release was not a violent escape." (Pl.'s Objections, p. 5-6) (citing <u>Pearson</u>, 553 F.3d at 1185-86; <u>Chambers v. United States</u>, 129 S. Ct. 687, 691 (2009)). However, the Court finds this authority inapposite. <u>Pearson</u> concerns whether an escape conviction is a "crime of violence" under the United States Sentencing Guidelines § 4B1.1(a). Whether an escape is a crime of violence necessitating a greater punishment under the Sentencing Guidelines is irrelevant to the issue in the present case: whether the application of the Greater Security Management Variable to Plaintiff's prisoner classification violated his due process rights or BOP policies. Plaintiff appears to be asserting that because an escape does not constitute a crime of violence under the Sentencing Guidelines, it cannot serve as a basis for the application of a Greater Security Management Variable. The Court finds no support for this proposition in <u>Pearson</u> and directs the Plaintiff to BOP policies which allow the BOP to place a Greater Security Management Variable upon a prisoner's classification "in circumstances where an inmate represents a greater security risk (i.e., pending charges, detainer, *escape risk*, etc.)" and allows BOP employees to use their "professional judgment" when making classification decisions. P.S. 5100.08, Ch. 5, p. 5, p. 1. The BOP's decision to place a Greater Security Management Variable upon Plaintiff's security classification as an escape risk for his prior failure to appear at sentencing falls within this discretion.

system of Management Variables does not create a constitutionally protected liberty interest "because the policy does not impose atypical and significant hardships on inmates in relation to the ordinary incidents of prison life." Nixon v. Killian, 2006 WL 2883133 at *3 (W.D. Tex. Oct. 2, 2006) (citing Sandin, 515 U.S. at 483-84; see also Marti v. Nash, 227 Fed. Appx. 148, 150 (3rd Cir. 2007) (determining that P.S. 5100.08 does not grant prisoners due process rights to any particular security classifications); Hinton v. Fed'l Bureau of Prisons, 2009 WL 3347158 at *7 (S.D. W.Va. Oct. 14, 2009) (finding that P.S. 5100.08 does not contain explicit, mandatory language or standards limiting BOP discretion that would give rise to a protected liberty interest).

In fact, Title 18 U.S.C. § 3621(b) vests the BOP with broad discretionary authority as to a prisoner's classification. See generally 18 U.S.C. § 3621. The statute provides that the "Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability . . . that the Bureau determines to be appropriate and suitable." 18 U.S.C. § 3621. Thus, instead of "explicitly mandating" that the BOP place a prisoner in a certain facility, the statute grants the BOP discretion on where to place a prisoner based on his or her security classification. Furthermore, P.S. 5100.08 requires the BOP to use its "professional judgment" when deciding an inmates' security classification. P.S. 5100.08, Ch. 6, p. 1. As such, prison administrators are granted wide discretion when classifying inmates. See Bell v. Wolfish, 441 U.S. 520, 547 (1979). For these reasons, the Court finds that BOP policies and regulations do not themselves create a protected liberty interest in a prisoner's security classification necessitating due process protection.

Plaintiff, in his objections to Defendants' Motion to Dismiss, further contends that the Second Chance Act, 18 U.S.C. § 3624(c)(1), creates a liberty interest "in being placed in an

institution where [Plaintiff] can pre-plan an re-entry strategy to help prepare him for release into society, i.e., allowing him to be placed in the lesser security institution so that he can participate in community work programs BOP inmates are allowed to participate in, contact, even if limited with civil members of society, etc." (Pl's Objection to Def's Mot. to Dismiss [Docket No. 19], p. 4). The Court does not believe that the Second Chance Act creates a liberty interest as argued by the Plaintiff.

Among other grants of authority within the Second Chance Act, the BOP is permitted to consider placing inmates in residential reentry centers ("RRCs") for a maximum of 12 months of an inmate's sentence based on five factors in 18 U.S.C. § 3621(b). See 18 U .S.C. § 3624(c)(1). The Act provides that the BOP Director shall "ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." Second Chance Act, Pub.L. 110-199, § 251, 122 Stat. 660, 692 (2008). Thus, section 3624(c)(1) authorizes the BOP to consider placing an inmate in an RRC for up to the final 12 months of his or her sentence. Section 3624(c)(4) also states that nothing in section 3624 "shall be construed to limit or restrict the authority of the Director or of the Bureau of Prisons under [18 U.S.C. § 3621, the statute empowering the BOP to take a convict into custody and designate a place of imprisonment.]"

As discussed above, when a statute grants the BOP a great deal of discretion, the Congress has not conferred a liberty right on an inmate. Meachum, 427 U.S. at 226-28. Rather, a protected liberty interest exists only when a regulation uses "explicitly mandatory language" instructing the decision-maker to reach a specific result if certain criteria are met. Kentucky Dept. of Corrs., 490 U.S. at 463. Here, Plaintiff points to no "explicitly mandatory language"

creating a protected liberty interest in the Second Chance Act. Instead, the language of the Second Chance Act is clear that federal prison officials have been given full discretion to control prisoner classification and eligibility for rehabilitative programs by Congress, including those contemplated by the Second Chance Act. Moody, 429 U .S. at 88 n. 1 (citing Meachum, 427 U.S. 215); Walton v. Smith, 2010 WL 2836320 at *1 (C.D. Ill. Jul. 15, 2010) (finding that Second Chance Act does not mandate that any prisoner be placed in a residential reentry center for any period of time).[3]

    In this case, Plaintiff claims he has a liberty interest in being placed in an institution where "he can plan a re-entry strategy to help prepare him for release into society." (Pl.'s Objections, p. 4). However, to the extent Plaintiff claims that he should even be considered for placement in a RRC under the Second Chance Act, Plaintiff's claim is premature. Plaintiff arrived at FCI-Sandstone in May 2007 to serve a 163 month sentence. (Compl., p. 3, 9). Prisoners are reviewed for pre-release placements in RRCs 17-19 months before their projected release dates. Miller v. Whitehead, 527 F.3d 752, 756 (8th Cir. 2008); O'Hara, 2009 WL 3164724 at *2 (finding that prisoners are evaluated for RRC placement in the last two years of their sentence). Here, Plaintiff has only served 3 ½ years of a more than 10 year sentence. As such, he has not yet reached the time period during which the Second Chance Act would even arguably apply to his circumstances. Therefore, the Defendants had no obligation under the

---

[3] Various attempts by prisoners to argue that the Second Chance Act creates a liberty interest have failed in court. Montague v. United States, 2010 WL 4720042 at *3 (S.D. Miss. Nov. 15, 2010) (finding no liberty interest in participating in Second Chance Act programs); Knight v. Jett, 2010 WL 4052182 at *4 n. 1 (D. Minn. Sept. 13, 2010) (determining that the Second Chance Act does not create a constitutionally protected liberty interest in home confinement considering the discretion afforded to the BOP in implementing the program); Brown v. Rios, 2009 WL 5030768 at *11 (D. Minn. Dec. 14, 2009) (concluding that Petitioner does not have a constitutionally protected liberty interest in participating in a Pilot Program created by the Second Chance Act because the statute does not require the BOP to place every inmate who met the eligibility requirements into the pilot program); George v. Harmon, 2010 WL 3910071 at *9 (S.D. W.Va. Sept. 7, 2010) (finding no due process rights to placement in home confinement under the Second Chance Act). Accordingly, there is "no legitimate statutory or constitutional entitlement sufficient to invoke due process" on the basis of the Second Chance Act. Moody, 429 U .S. at 88 n. 1.

13

Second Chance Act to even consider whether, in their discretion, he should be placed in an RRC at the present time. For these reasons, the Plaintiff has not demonstrated that the Second Chance Act creates a liberty interest subject to due process requirements.

Because Plaintiff has failed to show that Defendant's actions violated a constitutional right, the doctrine of qualified immunity bars his Due Process claims against the Defendants individually. Based on the above reasoning, the Court recommends dismissal of Plaintiff's Due Process claims.

### D. Retaliation

In another claim, Plaintiff asserts that his constitutional rights were violated since the Defendants treated him unfairly because he was given the Greater Security Management Variable in retaliation for his litigation activities on behalf of himself and other inmates. (Compl., p. 7, 11). In support of his claim, Plaintiff cites a number of cases where courts have found a constitutional right for prisoners to engage in legal activities. (Compl., p. 6-7) (citing Johnson v. Avery, 393 U.S. 483, 485 (1969); McCalvin v. Fairman, 603 F.Supp. 342 (C.D. Ill. 1985); Crowder v. Lash, 687 F.2d 996, 1004 (7th Cir. 1982); Buise v. Hudkins, 584 F.2d 223, 229 (7th Cir. 1978)). In response, Defendants contend that Plaintiff's retaliation claim should be dismissed because he has not exhausted his administrative remedies for that claim. (Pl's Mem. in Supp. of Mot. to Dismiss [Docket No. 10], p. 8-9).

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust administrative remedies before a claim can be brought in court. Jones v. Bock, 549 U.S. 199, 211 (2007). All suits deriving from prison life and conditions, "whether they involve general circumstances[,] particular episodes ... excessive force or some other wrong," fall under the ambit of the PLRA. Porter v. Nussle, 534 U.S. 516, 532 (2002). Failure to exhaust administrative remedies

constitutes an affirmative defense meaning that Plaintiffs are not required to plead exhaustion. Jones, 549 U.S. at 214-216. However, a failure to exhaust administrative remedies may form the basis of a Rule 12 dismissal for failure to state a claim upon which relief may be granted in a prisoner case. Id. In this case, although Plaintiff did not specifically plead that he exhausted his administrative remedies, he did attach documents evincing his various appeals of the BOP's decision to apply a Greater Security Management Variable to his security classification to his complaint. An examination of Plaintiff's attachments to his complaint demonstrate that Plaintiff never argued on administrative appeal that the Greater Security Management Variable was applied to his security classification in retaliation for "jailhouse lawyering." (Compl., p. 15-32) As such, the Court recommends that Plaintiff's retaliation claim should be dismissed for failing to exhaust administrative remedies.

### E.   Conspiracy Claim

In his complaint, Plaintiff also asserts that the Defendants violated 18 U.S.C. § 241 by forming a conspiracy to "injure, oppress, threaten or intimidate any person . . . in the free exercise or enjoyment of any right or privilege secured to him by the Constitution." (Compl., p. 2 (citing 18 U.S.C. § 241). Defendants assert that 18 U.S.C. § 241 is a criminal statute which does not provide for civil remedies.

The statute reads defined the proscribed conduct as where:

> . . . If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same.

18 U.S.C. § 241. However, Defendant is correct that 18 U.S.C. § 241 is a criminal statute which provides no basis for civil liability. El Bey v. Phil Bredesen, 2010 WL 5069882 at *3 (W.D. Tenn. Dec. 6, 2010) Shahin v. Darling, 606 F.Supp.2d 525, 538 (D. Del. 2009) (citing United

States v. Philadelphia, 644 F.2d 187 (3rd Cir. 1980)); Mazzeo v. Gibbons, 649 F.Supp.2d 1182,

1198 (D. Nev. 2009) (citing Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980)). The

Plaintiff has "no authority to initiate a federal criminal prosecution of the defendants for their

alleged violation of 18 U.S.C. 241." Jarvis v. United States Dept. of Justice, 2000 WL 876554 at

*1 (6th Cir. 2000). Rather, only the United States as prosecutor can bring a complaint under 18

U.S.C. § 241. Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir. 1989). As such, the Court lacks subject

matter jurisdiction to hear Plaintiff's conspiracy claim. The Court recommends dismissal of

Plaintiff's conspiracy claim.[4]

## F.    Equal Protection Claim

Defendants further ask this Court to grant summary judgment in their favor on a

purported Equal Protection claim by Plaintiff. The Court is not entirely certain that Plaintiff

pleads an Equal Protection violation. Plaintiff's assertions appear to be contextual background

---

[4] Defendants also seek dismissal of any civil claim outside of 18 U.S.C. § 241 brought by Plaintiff. However, the
Court finds no evidence in Plaintiff's complaint that he is making a civil conspiracy claim. Even assuming for
argument that Plaintiff attempted to plead a civil conspiracy claim, the Court concludes that such a claim would not
survive the present motion to dismiss because it fails to state a claim that is plausible on its face. Iqbal, 129 S.Ct. at
1949. Plaintiff pleads no facts in support of a civil conspiracy allegation. A conspiracy requires "an agreement
between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage."
Gometz v. Culwell, 850 F.2d 461, 464 (8th Cir. 1988) (citing Mizokami Bros., Inc. v. Mobay Chem. Corp., 660 F.2d
712, 718 n. 8 (8th Cir. 1981)). Here, Plaintiff alleges "no facts suggesting who the specific conspirators were or
what they did in relation to the conspiracy, and he alleges no facts supporting that there was any sort of agreement to
deprive him of his constitutional rights." Hahn v. Bauer, 2010 WL 396228 at *16 (D. Minn. Jan. 27, 2010); see also
Stouffer v. Eulberg, 2010 WL 2403760 at *1 (W.D. Okla. June 11, 2010) (finding that prisoner failed to state a
conspiracy claim because the complaint discussed no facts suggesting concerted action between two defendants);
Francois v. Miller, 2009 WL 4799312 at *8 (E.D. La. Dec.2, 2009) (determining that plaintiff's "use of the word
conspiracy is not supported in his complaint," and that his "reference to a non-specific conspiracy fails to state a
claim for which relief can be granted"); Vega v. Artus, 610 F.Supp.2d 185, 203 (N.D. N.Y.2009) (dismissing
conspiracy claim brought by a pro se prisoner because it "does not assert any facts giving rise to a conspiracy, but
instead vaguely asserts conclusory statements relating to an alleged conspiracy among Defendants"). Thus, any
assumed attempt by Plaintiff to plead a civil conspiracy claim likewise would not survive the present Rule 12(b)(6)
motion to dismiss.

rather than the elements of a specific claim. However, the Court will address the Defendant's

arguments on this issue and assume that Plaintiff has sought to allege a claim for a violation of

the Equal Protection clause.

The statements which could arguably give rise to an Equal Protection claim in Plaintiff's

complaint read:

> And while staff at this institution refuse to admit it, the petitioner sees a trend at this institution to treat non-caucassion inmates with a different, and lower, standard of fairness than those who are of the white race.

> This Petitioner has been at this institution since May, 2007, at which time he has abided by all rules and regulations yet has been unfairly selected for treatment which is less than fair when considering other similarly situated inmates.

(Compl., p. 5). Later in his complaint, Plaintiff additionally asserts that he is of

"mexican/spanish descent." (Compl., p. 12). Therefore, Plaintiff asserts that Defendants

discriminated against him on account of his race by placing the Greater Security Management

Variable upon his security classification, failing to grant him a hearing before adding the

management variable to his classification, and otherwise generally being treated unfairly.

To successfully plead an equal protection claim, an inmate must allege "facts to show

that he was treated differently from other inmates because he belonged to a protected class."

Seltzer-Bey v. Delo, 66 F.3d 961, 964 (8th Cir. 1995). Moreover, Plaintiff must show that he

was similarly situated to, and treated differently from, other inmates, and that this discrimination

was purposeful or intentional rather than incidental. Washington v. Davis, 426 U.S. 229, 239

(1976). Purposeful discrimination requires more than "intent as volition or intent as awareness

of consequences." Pers. Adm'r of Mass. v. Feeney, 442 U.S. 256, 279 (1979). Rather, a

decisionmaker must undertake a course of action " 'because of,' not merely in spite of,' [the

action's] adverse effect upon an identifiable group." Id. Thus, to plead a claim for

discrimination based on membership in a protected class requires a demonstration of "sufficient factual matter to show that [defendants] adopted and implemented the . . . policies at issue not for a neutral . . . reason but for the purpose of discriminating on account of race, religion or national origin." Iqbal, 129 S.Ct. at 1948-1949.

Here, Plaintiff's conclusory allegations in his complaint do not give rise to an equal protection violation sufficient to survive a motion to dismiss. Pigott v. Corrs. Corp. of Am., 2008 WL 3244001 at *4 n. 5 (D. Minn. Aug. 6, 2008) (citing Davis v. Hall, 992 F.2d 151, 152-53 (8th Cir. 1993)). First, Plaintiff has not alleged any facts showing that he was treated differently from other inmates because he belonged to a protected class. Divers v. Dep't of Corr., 921 F.2d 191, 193 (8th Cir. 1990) (per curiam) (finding that plaintiff must show he received treatment "invidiously dissimilar to that received by other inmates"). In fact, Plaintiff provides no facts in his complaint showing that he was treated disparately from other prisoners, particularly non Mexican/Spanish prisoners. Jackson v. Fed. Bureau of Prisons, 2007 WL 843839 at *14 (D. Minn. Mar. 16, 2007) (granting motion to dismiss because no evidence demonstrated that prisoner was treated disparately from other prisoners who were not members of his protected class). Rather, Plaintiff makes only generic, conclusory assertions that minorities are not treated as well as white inmates at the prison. Plaintiff makes no factual allegations that he was specifically discriminated against through disparate treatment from that received by a similarly situated inmate, nor does he factually allege how any purported discrimination occurred. See Parkhill v. Minn. Mut. Life Ins. Co., 286 F.3d 1051, 1057-58 (8th Cir. 2002) (stating that "well-pleaded facts, not legal theories or conclusions, determine adequacy of complaint"); Posr v. Court Officer Shield # 207, 180 F.3d 409, 419 (2nd Cir. 1999) (finding allegation of § 1985 conspiracy to violate plaintiff's equal protection rights insufficient

where plaintiff asserted "racial motivation" but failed to "allege facts sufficient to support a conclusion of race-based animus" such as an allegation that defendants made verbal references to plaintiff's race or that they improperly treated other members of plaintiff's race); John Gil Const., Inc. v. Riverso, 99 F.Supp.2d 345, 353 (S.D.N.Y. 2000) ("[A]ssertions of selective enforcement and racial animus [that] are wholly conclusory and unaccompanied by any supporting factual allegations ... are insufficient to state a claim under either the Equal Protection Clause or 42 U.S.C. § 1983."); Howard v. Jaramillo, 2008 WL 5381469 at *8 (D. Colo. Dec. 22, 2008) (noting that inmate's subjective belief that he was a victim of racial discrimination is insufficient to raise equal protection violation).

In the present case, Plaintiff has not alleged facts sufficient "to plausibly suggest [Defendants'] discriminatory state of mind." Iqbal, 129 S.Ct. at 1952. In his complaint, Plaintiff has merely offered a "formulaic recitation of the elements" of an Equal Protection claim. Twombly, 550 U.S. at 555. Such allegations "will not do." Id. Plaintiff must provide more than "naked assertions devoid of further factual enhancement" to survive a motion to dismiss. Iqbal, 129 S. Ct. at 1950-51. Undoubtedly, legal conclusions have a place within a complaint, but "they must be supported by factual allegations," which Plaintiff has not provided here. Id. at 1950. As such, the Court recommends that to the extent any putative Equal Protection claim can be found in the complaint, it be dismissed.

### G.     BOP Policy Violations

Finally, sprinkled throughout his complaint, Plaintiff mentions the Defendants' failure to comply with statutes directing BOP actions and BOP regulations. (Compl., p. 2, 4, 9-11). The Court also remains unsure whether the Plaintiff is attempting to specifically bring a claim for statutory and regulatory violations. For the sake of completeness, the Court will briefly address

19

any such possible claims. Plaintiff alleges that the BOP violated its own regulations and policies when it failed to give him a custody classification hearing or provide him with notice of the agency's intent to place Greater Security Management Variable on his record. (Compl., p. 2, 4, 9-11). Specifically, Plaintiff asserts that the Defendants failed to follow P.S. 5100.08 and 18 U.S.C. 3621 because the prison officials never informed Plaintiff that they requested that a Greater Security Management Variable be applied to his security classification. (Compl., 2, 10, 11).

A threshold question for the Court is whether it possesses jurisdiction to hear Plaintiff's challenge to the BOP's actions. A presumption exists that agency action is subject to judicial review. However, where Congress has specifically precluded review or committed agency action to discretion by law, federal courts lack jurisdiction. Heckler v. Chaney, 470 U.S. 821, 828-29 (1985). Only "clear and convincing evidence" of Congress' intent to foreclose judicial review will overcome the general presumption that it is available. Abbot Laboratories v. Gardner, 387 U.S. 136, 141 (1967). Congress' intent to preclude review may be evinced through an examination of relevant factors, such as the text of the statute and legislative history. Carlin v. McKean, 823 F.2d 620, 623 (D.C. Cir. 1987). Where Congress has immunized agency decision-making from judicial scrutiny, a court may conduct only limited review, and may consider only whether the agency has acted outside its statutory limits or has violated the constitution. Webster v. Doe, 486 U.S. 592, 603 (1988).

Here, Plaintiff challenges the agency's classification decision as being in violation of the BOP's policies and 18 U.S.C. § 3621, which grants the BOP the power to make classification and transfer decisions. The jurisdictional question at issue asks whether Congress has foreclosed judicial review of such an agency action. The answer to this question is yes.

Judicial review of agency actions made pursuant to 18 U.S.C. § 3621, including actions

made under P.S. 5100.08, is foreclosed under 18 U.S.C. § 3625 which provides that "[t]he

provisions of sections 554 and 555 and 701 through 706 of the title 5, United States Code [the

Administrative Procedure Act], do not apply to the making of any determination, decision, or

order under this subchapter." The provisions of the Administrative Procedure Act ("APA") cited

by 18 U.S.C. § 3625 set forth the procedures that govern judicial review of agency action,

rulemaking and adjudication. Thus, § 3625 expressly established that the APA does not apply to

decisions made under 18 U.S.C. § 3621, including P.S. 5100.08, under which Plaintiff brings his

claim here. See P.S. 5100.08, p. 1. Other courts have found that the statutory language of 18

U.S.C. § 3625 along with the legislative history of the statute evince Congress' intent to "carve

out an area of decision making committed solely to agency discretion and not subject to judicial

review." Lyle v. Sivley, 805 F.Supp. 755, 759 (D. Ariz. 1992). Thus, challenges to BOP actions

taken pursuant to 18 U.S.C. § 3621 are limited to claims that the BOP acted beyond the scope of

its discretion when it added a Greater Security Management Variable to Plaintiff's security

classification.[5] Wiggins v. Wise, 951 F.Supp. 614, 618-19 (S.D. W.Va. 1996) (finding that 18

---

[5] Indeed, the Defendants actions here fall well within the discretion granted by Congress to the BOP and within the discretion given to BOP employees in making classification decisions under P.S. 5100.08. Congress granted the BOP the authority to "designate the place of the prisoner's imprisonment . . . [and] . . . may designate any available penal or correctional facility . . . that the Bureau determines to be appropriate and suitable, considering . . . (3) the history and characteristics of the prisoner." 18 U.S.C. 3621(b). Pursuant to this statute, the BOP created P.S. 5100.08. See P.S. 5100.08, p. 1. This policy allows the BOP to place a Greater Security Management Variable upon a prisoner's classification "in circumstances where an inmate represents a greater security risk (i.e., pending charges, detainer, escape risk, etc.) than their assigned security level." Therefore, the policy statement grants BOP employees discretion to place a management variable upon a prisoner's classification.

Plaintiff cites Chapter 4, page 10-11 as evidence that the Defendants acted beyond their discretion. This section reads: "(a) Failure to Appear for traffic violations, absconding, runaways from foster homes and similar behavior should not be scored under the Escape history item, even if clearly documented, but should be considered on a case-by-case basis under the Management Variable 'Greater Security.'" P.S. 5100.08, Ch. 4, p. 10-11. However, contrary to Plaintiff's assertion, Defendants followed this directive. This section is included in the "Inmate Load Data" chapter which provides instruction on how to fill out the Inmate Load and Security Designation Form which "records the physical and demographic information of inmates entered into SENTRY." P.S. 5100.08, Ch. 4, p. 1. Thus, the section cited by Plaintiff merely states that past behavior demonstrating a propensity for escape should be considered as a Greater Security Management Variable rather than be entered into the Inmate Load Data form, which is exactly what the BOP did here. Furthermore, P.S. 5100.08 allows BOP employees to use

21

U.S.C. § 3625 precludes review of adjudicative decisions of agencies by federal courts); <u>Sesler v. Pitzer</u>, 926 F.Supp. 130, 132 (D. Minn. 1996). For these reasons, any claim Plaintiff may have attempted to assert challenging the Defendants actions as being in violation of P.S. 5100.08 or 18 U.S.C. § 3621 fails for lack of subject matter jurisdiction.

## VI. CONCLUSION

**IT IS HEREBY RECOMMENDED THAT:**

1. Defendant's Motion to Dismiss (Doc. No. 9) be GRANTED;

Dated: January 7, 2011

_____
Leo I. Brisbois
U.S. MAGISTRATE JUDGE

## N O T I C E

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by January 21, 2011**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and

---

"professional judgment" when making a classification decision. P.S. 5100.08, p. 1. Plaintiff's failure to appear at his sentencing was considered as a Greater Security Management Variable on a "case-by-case" basis as required by P.S. 5100.08 and well within the BOP employees' professional judgment.

Furthermore, Plaintiff continues to assert that P.S. 5100.08 and BOP policies require that notice and a hearing be given to a prisoner before a management variable is added to a prisoner's security classification. (Compl., p. 2, 4, 9-11). However, Plaintiff fails to point to any specific section in P.S. 5100.08 or any other BOP regulation that requires such a notice or a hearing.

Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.